## KLEINSCHMIDT ET AL., appellants, *v.* McANDREWS ET AL., respondents.

PRACTICE.— An appeal from a decision of a district court sustaining a motion for non-suit and directing entry of judgment for defendant, should be by a statement on appeal, containing the evidence settled by the court in the presence of the parties. A statement on motion for new trial would be improper, for in such case there has been no trial proper.

Objection to the decision of the court, in such case, cannot, in the nature of things, be made till after such decision is rendered, and cannot be such an exception as defined by statute, and intended to be included in a bill of exceptions.

Evidence can only be made part of a judgment roll by being settled in a bill of exceptions.

On appeal from decision refusing non-suit, the evidence can be brought up either by bill of exceptions or statement on appeal, because in such case the rule is during trial and before final decision.

By an appeal from a judgment without statement nothing is brought

up, or is part of the record on appeal, but the judgment roll; nothing else will be considered.

No exceptions will be considered save such as are taken in the mode prescribed by statute.

A motion for non-suit under our statute is, like a demurrer to evidence under the old English procedure, purely a question of law for the courts.

The provisions of the Montana code regulating appeals and bills of exception are not in violation of organic act, section 9, but in accordance with powers therein delegated to the legislative assembly of Montana.

CONSTRUCTION OF STATUTE.— Sections of Code of Civil Procedure construed, 234, 241, 279, 281, 282, 284, 419.

*Appeal from Third District, Lewis and Clarke County.*

CHUMASERO & CHADWICK and SANDERS & CULLEN, for appellants.

This is an action brought to recover possession of certain goods, wares and merchandise which were taken from plaintiffs' possession by defendants; the taking being attempted to be justified under process of attachment against one N. E. Ingersoll, from whom the plaintiffs purchased, and, as they claim, acquired the possession.

The questions presented by the stipulation of the parties for decision were simply these:

· 1st. The ownership of the property in dispute, and who was entitled to possession.

2d. In whose possession the goods were when taken by the defendant McAndrews.

There was no question made on the trial of the cause as to the execution of the bill of sale by Ingersoll to plaintiffs, or that it was *bona fide*, and the evidence fully sustained the truth of those propositions.

The proof shows that the bill of sale was executed by Ingersoll and delivered to plaintiffs between nine and ten o'clock on the evening of the 29th of March, 1879. That it was executed in Helena, and that the property sold, being a stock of goods, wares and merchandise, were in a store owned by plaintiffs, at a place called Vestal, about twenty-three miles distant.

That immediately upon the execution and delivery of the bill of sale, plaintiffs handed it to one Wiseman, a person then. in the employ of Kleinschmidt, with instructions to go immediately to Vestal and take possession of the property. That Wiseman, within an hour from the time of the execution of the bill of sale, started for Vestal, reaching there between three and four o'clock the next morning, being Sunday, and took full charge and possession of the property for plaintiffs, and remained in such. possession until the 31st of March, on which day the defendant McAndrews, as sheriff, came to Vestal and claimed to levy on the goods under an attachment in favor of Bristol, and subsequently took the same into his possession.

On this evidence the court below granted a non-suit, upon the ground that the bill of sale was not accompanied by the *immediate* possession of the property.

In other words, that the bill of sale was not signed with one hand and the goods delivered simultaneously with the other.

The decision of the case hinges exclusively upon the construction and definition to be given of the word "immediate," as used in the statute. Laws 1872, sec. 15, p. 394.

We are not entirely without precedent or authority to guide us. It seems to us that the only true construction to be given to the word is that placed upon it by Chief Justice Murray, one of the ablest judges who ever occupied a seat on the bench of the supreme court of California. He says in *Samuels* v. *Gorham*, 5 Cal. 226: "By an immediate delivery is not meant a delivery instanter. But the character of the property sold, its situation and all the circumstances must be taken into consideration in determining whether there was a delivery within a reasonable time so as to meet the requirements of the statute." See, also, on construction of the same section of the statute, the case of *Stevens* v. *Irwin*, 15 Cal. 504,

showing that a strict literal construction should not be placed upon it. As was said in that case where the word "continued" was commented on: "If continued change of possession meant that the vendor never should have control over or use of them, it would lead to very unjust and very absurd results." See page 506. The definition of the word continued is "extended without interruption." It is, in the sense in which it is used in the statute, fully, in every respect, equivalent to the word "immediate."

We call attention, also, to Bump on Fraudulent Conveyances, page 171, where it is said: "It is not necessary that a change of possession should at all times accompany the transfer. If it follows within a reasonable time thereafter, that is, as soon as the nature of the property and the circumstances attending the transfer will admit it, it is sufficient." To support which the author cites a number of cases. See, also, pages 182–3, and cases cited.

The case of *Gandette* v. *Travis*, 11 Nev. 156 *et seq.*, is a case directly in point, and we call especial attention to it by the court.

In the case of *Walden* v. *Murdock*, 23 Cal. 540, it was held, notwithstanding the word "immediate" in the statute, that a *bona fide* sale of cattle running at large was not fraudulent as against creditors of the vendee, *merely* because the sale was not followed by an immediate delivery of the possession."

All laws must be reasonably construed; that is the unvarying rule of construction. A strict construction in that case would not have been reasonable, but would have led, as was said in the case in 15th Cal., "to very unjust and absurd results," as such construction has done in the case at bar. See, also, *Ex parte Ellis*, 11 Cal. 224; 1 Pars. Cont. 441–2, and notes; Pars. Merc. Law, 153; *Allen* v. *Parish*, 3 Ohio, 198; *Peake* v. *Canal Com'rs*, 3 Scam. 153; *People* v. *Admire*, 39 Ill. 251; *Jackson ex dem. Scofield*, 3 Cow. 89.

In every case where an apparently different construction has been given to the word "immediate," it has been where long intervals, in many cases extending to years, have elapsed between the sale and delivery of the property, and where the vendor has continued in possession.

Lord Bacon says in his argument in case of Revocation of Uses, Works IV, 253: "The word is often understood, not literally of a time succeeding without any interim or actual interval, but of an effectual and lawful time, allowing all the adjuncts and accomplements necessary to give an act full legal effect to be performed."

And so of the word "instanter," which means "without delay, forthwith." "But as used now it does not import an absolutely instantaneous succession, but only that which is comparatively so." Burrill's Law Dict. vol. 2, "Instanter." The words instanter and immediate are synonymous.

If the ruling of the court below in this case be sustained, it will be an utter impossibility ever to perfect a sale to be evidenced by writing, unless of some small portable article which the vendor could carry in his pocket.

If parties should go to an attorney's office, next door to the place where the property sold actually was at the time, and the bill of sale should be drawn, executed and delivered before leaving the attorney's office, and the parties pass out of the office to make actual delivery of the property sold, there would be an interval between sale and delivery, and if the vendor was at the time indebted to any other person, the construction given by the court below would render the sale void. Such would be the inevitable result. And it would tend to the destruction of the business of the country. No cattle, or sheep, or horses, on one of our ranges could be safely purchased; no transfer of title to goods in transit could be certainly relied on; scarce any business transaction could be safely made or entered into.

If one have a horse at a livery stable, and on the streets make sale of it, and receive his money, and then go to the stable and make delivery, or send an order to the stable-keeper to deliver, such sale would also be void as against a creditor. It would be the same with ponderable articles incapable of actual manual delivery.

Can any construction be more unjust and unreasonable than such an one, or lead to more absurd and ridiculous results? We insist that it is not only absurd, but contrary to public policy, and could never have been intended by the legislature.

Can it be that where a transaction is made in good faith, and every possible exertion is made to comply with the law, as in this case, that the very short interval of time between the actual sale and the taking of possession by the vendees of the property sold (an interval not exceeding five hours, in the night-time, after business hours, on the last day of the week, Saturday), during which interval a distance of twenty-three miles, at an inclement season of·the year, over a mountainous road, was traveled, without any loss of time, and with the utmost possible expedition, by the agent and servant of plaintiffs, does not constitute "an immediate delivery" within the meaning of the statute? We believe not.

No appreciable length of time was permitted to elapse. It was an immediate reaching out of the arm to take possession on the sale being consummated. In the judgment of the court below, the length of the arm seems to have made the difference, and rendered the transaction fraudulent as to the creditors of Ingersoll. If possession could have been seized on the *instant*, the sale would have been valid. If the arm was not already stretched to its utmost length, at the exact instant when the signature to the bill of sale was completed, and placed upon the goods sold, then the *bona fide* effort of the vendee to realize the fruits of his purchase failed to perfect a *valid* transfer by a *few inches* in distance, which afforded a

chance for an intervening tick of the clock. The result being, that notwithstanding the plaintiffs were in actual, undisturbed possession of the property long before any other lien had attached, and had done all that the law contemplated and that human energy could accomplish, under the decision of the court below they are deprived of their property and left utterly without remedy.

There are some questions the answer to which is so palpable and plain that a lawyer ofttimes finds himself at an utter loss to find argument to maintain. Of such character is the one presented to the court, and it seems to us that the mere presentation of the question itself carries with it the answer, that the sale was good in law as well as in fact, and that the court below erred in granting the non-suit.

E. W. and J. K. TOOLE, for respondents.

1st. The bill of exceptions contained in the transcript in this cause cannot be considered by the court on this appeal. It could not, in the very nature of things, have been taken and filed until after the rendition of the judgment of non-suit. It is therefore no part of the judgment roll, and *cannot* be examined on an appeal from the judgment. See Laws 1877, Practice Act, secs. 279, 294. This is the only bill of exceptions provided for by the statute which becomes a part of the judgment roll. It is confined exclusively to the decision of the court upon a matter of law, must be before the final determination of the case, taken during the trial, and the point of the exception particularly stated. Section 281. The authorities all concur upon the proposition that, on an appeal from a judgment, the judgment roll alone can be considered.

2d. Nor will the court consider what purports to be a bill of exceptions, as a statement upon appeal. 1st. Because it is not made in the manner provided by the statute. 2d. It does not point out particularly the errors,

nor contain any assignment of errors, as required by section 419. See *Wetherbee* v. *Carroll et al.* 33 Cal. 549; *Kusell* v. *Sharkey*, 46 Cal. 3 *et seq.;* 10 id. 194; 11 id. 339, 391; 12 id. 280. 3d. Because the question as to whether or not the judgment of non-suit *was* or *was not* supported by the evidence, could only be heard upon an appeal taken within *sixty days* after its rendition. This is the real question in this case, and if it was *not actually necessary* to have moved for a *new trial* in *the court below*, in order to review the case upon its merits as to the sufficiency or insufficiency of the evidence to support the decision or judgment of the court, it was necessary that the appeal should have been taken within sixty days in order to give the court jurisdiction to determine this question. See Statutes of 1877, Civil Practice Act, sec. 408. This seems to us conclusive of this case, unless, from an inspection of the judgment *roll alone*, error can be found upon which the case should be reversed. There is no pretext even for this, and it is not claimed or urged by appellants that there is. A motion for a new trial should have been made. It is the only mode provided by the statute for reviewing a question of fact. The judgment of the court upon the sufficiency or insufficiency of the evidence may in every case be said in some sense to be a decision of a matter of law. When the facts are ascertained, the deductions therefrom may be denominated conclusions of law. Yet under our system of practice, when the functions of the court are invoked to pass upon the question of the sufficiency or insufficiency of the evidence upon which a verdict or the decision of a court or referee is based, the statute has pointed out but one way in which it can be done, and it is exclusive of all others. The statute that provided for the presentation of these questions by the mode pursued in this case, *i. e.*, by bill of exceptions, was repealed by Practice Act of 1877. Section 408, *supra*, provides the time within which the appeal shall be taken, and sections

284 and 285 the mode of presenting the question. See *Levy* v. *Gettleson,* 27 Cal. 685 *et seq.; Harris* v. *S. F. R. Co.* 41 id. 404; 27 id. 107; approved in 2 Blake, 555; *Allport* v. *Kelly,* 2 Mont. 343.

The court here will infer that all the evidence necessary to support the findings or decision of the court was introduced by the plaintiffs on the trial of the case below. This has been too often settled here, and elsewhere under statutes like ours, to require the citation of authorities to support it. The only mode of entertaining a bill of exceptions which was not taken at the trial and before its conclusion, so as to become a part of the judgment roll, is under the second subdivision of section 287 of the Practice Act. But even if taken and presented under this section of the Practice Act, that is, on a motion for a new trial, it does not show that it was all the evidence introduced on the trial. The decision of the court as matter of law upon the facts should be specified on motion for a new trial. See *Donahue* v. *Gallavan,* 43 Cal. 573 *et seq.; City of Stockton* v. *Cram,* 45 Cal. 247 *et seq.;* 1 Montana, 263 *et seq.;* 42 Cal. 444.

If appellants had offered certain evidence during the trial to support the issues on their part, and the court had excluded it, and thereupon a bill of exceptions had been signed and filed, then the bill would become a part of the judgment roll, and the court here would examine into it for error on an appeal from the judgment alone, without any statement on appeal or motion for a new trial. We earnestly protest against such an innovation of the Practice Act, and the settled construction it had received prior to its adoption here, as is sought to be accomplished by the appellants; and submit with confidence the position we have taken under the authorities cited. 1st. The court has no jurisdiction to look behind the judgment roll and examine into the merits of a bill of exceptions taken after the trial has terminated by the judgment of the court below. 2d. That there is no state-

ment on appeal, and the sufficiency or insufficiency of the evidence could not be considered if there was, nor could they entertain it under sec. 408, Civil Practice Act. 3d. No motion for a new trial was made so as to bring it within the provisions of the second subdivision of section 287 of the Practice Act.

3d. Should the court, however, be of opinion that it has jurisdiction upon an *appeal* from the *judgment* without any bill of exceptions forming a part of the judgment roll, any statement on appeal or motion for a new trial, so as to present properly the questions of law, or sufficiency of the evidence to justify the decision, and should feel disposed to determine the questions presented by the record for the purpose of settling an important proposition in this territory, then we say that section 15, in connection with section 16, page 394, Codified Statutes, is conclusive against the position of appellants. Section 15 provides that "every *sale,* etc., unless the *same be accompanied* by the *immediate* delivery of the *thing sold,* etc., *shall be conclusive* evidence of fraud, as against *creditors* of the *vendor,*" etc. Section 16, in defining the class of persons against whom a sale *unaccompanied* by *immediate delivery* shall be *void,* says, "it shall include any creditor of the vendor or assignor at *any* time while such goods and chattels shall remain in his possession or under his control." The bill of exceptions and records show that Bristol was a creditor intermediate the sale, before the delivery, and while the goods were in possession and under the control of Ingersoll. These provisions are emphatic and unequivocal. They should not be frittered away by loose construction, or made to bend to any imaginary idea of expediency. Counsel for appellant seem to rely much upon an interpretation put upon the statute of California at an early day, by Mr. Chief Justice Murray, in a *very* brief opinion contained in 5 Cal. 227. Taking it that he was the great jurist he is claimed to be by appellants, and that he is *ac-*

*curate* in his quotation of the statute then in force in that state, and you will find a vast difference in its phraseology from the one under consideration. He says: "To constitute a valid sale of personal property against creditors, there must, according to the provisions of the statutes of this state, be 'an immediate delivery thereof, *accompanied* with an actual and continuous change of possession.'" It will be seen also, by reference to Wood's Digest of California Statutes, p. 107, secs. 403, 404, that its language has been changed so as that it is identical with sections 15 and 16 of our statutes. This may in a measure account for the different construction given it by the recent California decisions. The word "*accompanied*" is taken from that portion of the section referring to the change of possession, and placed in such connection that it qualifies the phrase "immediate delivery," which in turn refers to and qualifies sale. Under the statute thus transposed, the delivery must not only be immediate, but it must *accompany* the sale. All the argument of counsel that the articles to be delivered are bulky, or may be, or may be at a great distance from the place of the sale, is solved by the single suggestion that a delivery and acceptance is necessary, and that a bill of sale is not usually so bulky or unwieldy as that it would be cumbersome to *accompany* the sale and delivery." Some states have seen proper to make provisions for the exigencies suggested by counsel for appellants. Others have doubted its propriety, and consider that it subverts the very objects of the statute of frauds, and opens wide the gate for the consummation of that which it was obviously intended to prevent. Such has been the judgment of our legislative assembly, and the court below has but followed the law. "There are some questions the answers to which are so palpable and plain, that a lawyer often finds himself at an utter loss to find argument to maintain. Of such character is the one presented to the court." They are generally found where

the plain, palpable and unmistakable language of a statute, and unequivocal decisions of the courts under it, are sought to be invaded by the mere *ipse dicit* of counsel. "of such character is the one presented to the court" by the counsel of appellants, and their apology therefor is gratefully accepted.

The questions submitted involve a construction of sec. 15, p. 394, Laws of 1872.

We quite agree with counsel for appellants that we are not entirely without authority or precedent to guide us. Indeed, we have the concurrence of (Judge) Chief Justice Murray, "one of the ablest judges who ever occupied a seat on the bench of the supreme court of California," in an opinion opposed to the learned gentleman who prepared the brief of appellants in this case. *Chenery* v. *Palmer*, 6 Cal. 119.

This case goes further, and holds that such a transfer as this is void as to creditors, and this though delivery be made before levy is made by the creditor. To the same effect is the last adjudication by the same court on this question. *John A. Watson* v. *John Rogers*, 53 Cal. 401.

In this last case, Judge Rhodes, speaking for the entire court, says: "It (the code) denounces the transfer as fraudulent and void as against the claims of a creditor, who is such creditor during any of the time that the *person* who *makes the transfer remains in possession after a transfer*, which is not accompanied by an immediate delivery and followed by an actual and continued change of possession. Such a transfer being void as to the creditor, he may cause the property to be seized in the same manner as he might have done had there been no attempted transfer by the debtor."

The argument of appellants is ingenious, and might with more propriety be addressed to the legislature than the courts. However honest the transaction or intentions of the parties, the law, as it now exists, from motives of public policy, declares the contract void.

To remedy evil results which sometimes follow the enforcements of such a statute, and to meet such arguments and exigencies as are presented by appellants, it does not seem to us to depend so much "upon the length of the arm" to acquire possession, but rather whose arm it is.

"The strong arm of the law" appears to be more effective, however odious may be the comparison with the *length* of appellants. See Statutes of Missouri, sec. 10, ch. 67; R. C. 1845. It provides: "Every sale made by a vendor of goods and chattels in his possession or under his control, unless the same be accompanied by *delivery in a reasonable time, regard being had to the situation of the property*, and be followed by an actual and continued change of possession of the thing sold, shall be presumed to be fraudulent and void as against the creditors of the vendor or subsequent purchasers in good faith, and shall be conclusive evidence of fraud, unless it shall be made to appear to the jury, on the part of the person claiming under such sale, that the same was made in good faith and without any intent to defraud such creditor or purchaser."

Mark the distinction: Here provision is made for a delivery in "a reasonable time," and the presumption of fraud may be rebutted by proof of the *bona fides* of the transaction. Neither is permissible under the fifteenth section of our statute of frauds. See *Lesem* v. *Harniford*, 44 Mo. 323; *Woods* v. *Bugbey*, 29 Cal. 479.

In this latter case the court says: "If in fact there was not an actual and continued change of possession given, the statute pronounces the transfer fraudulent as to creditors, and the courts have no right to seek to evade its force and effect. No excuse or explanation can be entertained," etc.

Such a rule is the only one consistent with the object and purpose of the statute of frauds. It may be hard in a particular case, but it is founded in public policy and

cannot be made to yield to expediency or the circumstances of a given case. A principle once surrendered in a particular case is no longer firm, but trembles at every new attack. If a person in the town of Helena, who buys a stock of merchandise at Vestal, in another county, is allowed a reasonable time in which to take possession, in the absence of a statute *expressly* authorizing it, why would not a person who buys a stock of goods in Madison, Custer or Missoula counties be permitted a reasonable time in which to take possession from the remotest portion of the territory, if he happened to be there at the time of purchase; and we do not believe this would be contended. If an individual should purchase at Helena from a firm at Miles City, six hundred miles away, their stock of goods, and start without delay to take possession, and in the meantime a creditor of the vendor should levy on the property, would it be contended that the purchaser would have a "reasonable time" in which to take possession? We think not. Nor would it make any difference whether the creditor's levy was before or after such possession was taken by the vendee. *Chenery* v. *Palmer, supra; Watson* v. *Rogers, supra.*

If the time can be extended one hour to meet the exigencies of a particular case, it may be extended from that period indefinitely to meet the exigencies of another case, and thereby foster and encourage the very mischiefs the statute was designed to condemn. In resisting the first encroachment, the rule should be "*obsta principiis.*"

There is no dispute that the bill of sale was *intended* as an absolute sale, and to pass the title, but to have this effect under our statute the vendee ought to be where the property is when purchased. This position, we think, is strengthened by the statutory provision concerning chattel mortgages, which protects the mortgagee's rights while the property remains in the possession of the mortgagor, for a sufficient length of time in which to take *possession* or to record his mortgage, if the mortgage provide for retention of possession by the mortgagor.

The statute is in these words: "The mortgagee, in all mortgages made under this chapter, shall be allowed one day for every twenty-five miles of the distance between his residence and the county recorder's office where such mortgage ought by law to be recorded to conform with the provisions of this chapter, before any attachment or execution shall be valid made by the creditor of the mortgagor." Comley's Codified Statutes, sec. 906, p. 808.

In other words, this section *expressly* gives to the mortgagee a reasonable time in which to take possession or comply with the other requirements, and defines, in effect, what a reasonable time is. Appellants ask the court to interpolate a similar provision into the section under consideration, when the legislature manifestly intended what it says, that such sale shall be "*accompanied*" by an immediate delivery, and *followed* by a continued change of possession. We do not quite agree with the learned counsel for appellants that the construction given to this statute by the court below "will tend to the destruction of business." If so, as before suggested, the innovation upon the statute ought not to be made by the court, but the argument should be addressed to the legislature.

> "Stop innovation in its early stage,
> For when the upstart thing grows strong from age,
> No time, nor strength of tenets, stop its rage."

SANDERS & CULLEN, for appellants on rehearing.

In this case, the court below decided that the execution and delivery of a bill of sale of a stock of goods at a distance of twenty-three miles from where the goods were situate, at ten o'clock P. M., and the taking or delivery of possession of the goods at four o'clock the next morning, was within the condemnation of sec. 15, p. 394, of the statutes of 1871–2, and that the intervention of six hours between the delivery of the bill of sale and the goods was "conclusive evidence of fraud" as against a then creditor, who, two or three days thereafter, should attach said goods in the possession of such vendee.

Without equivocation or shrinking the court below made that decision, and the court then made an order that its said decision, with the exception thereto, should be "made a part of the record," which was done, and that record is in this court for review upon an appeal.

The respondent's counsel are not anxious to have that decision reviewed, and have in effect asserted the proposition that the authority of the court to make its decisions and transactions a part of the record, by order, is not authorized expressly by the statute nor deducible from its inherent powers.   We challenge both propositions:

1st.  Express authority of statute: "Bills of exceptions and appeals *shall be allowed* in *all cases* from the *final decisions* of said district courts to the supreme court."  [A short extract from the law creating this court.]  An exception is an objection taken to a decision upon a matter of law  .  .  .  from the calling of the action to the rendition of the verdict or decision.  .  .  .  The final decision in an action is "deemed to have been excepted to."  No particular form of exception shall be required. The objection shall be stated with so much of the evidence  .  .  .  as is necessary to explain it.  [Wisdom of Solomon, otherwise called Montana Code, secs. 279, 280, 282.]

"The following papers shall constitute the judgment roll.  .  .  .  Second.  .  .  .  *All* bills of exceptions *taken* and filed *in said action*."   [Sec. 294, the same Wisdom.]

" All bills of exception shall be reduced to form  .  .  . and signed during the *term* [clerical error makes it "time"] in which the same is tried," etc., etc.   Sec. 816.

If congress enacts that bills of exceptions and appeals shall be allowed from *final* decisions, it will be difficult to maintain that it is within the competency of a Montana legislative assembly to deny a bill of exceptions and appeal from the final decision, and confine it to the interlocutory rulings, without maintaining revisory power of the legislature over the acts of congress.

2d. Power inherent in courts independent of statutes: The authority of a court over its proceedings, its power to make any of its proceedings under the hand and seal of the judge part of the record, cannot be impugned, and until now has been unquestioned. Indeed, bills of exceptions have been disregarded where it has not been expressly ordered that they be "made a part of the record." *Wheeler* v. *Winn*, 53 Pa. St. 122; *Conrow* v. *Schloss*, 55 Pa. 28; *Endicott* v. *Pet*, 24 Pick. 339.

The claim that a motion must have been made for a new trial in the court below is conclusively disposed of by saying that there was no irregularity, abuse of discretion, misconduct, accident, surprise, or newly discovered evidence, which are the sole grounds for new trials. No new trial could have been granted, and the law does not require a vain thing.

There was no conflicting evidence. Plaintiffs proved purchase by and delivery to them of goods by Ingersoll, and subsequent taking by sheriff for Bristol; but defendants stand over the proceedings with a stop-watch, and say sale and delivery were not instantaneously contemporaneous, and are therefore fraudulent. If it were necessary to uphold a sale, the court would say that while bill of sale was handed to party at ten P. M., yet it was not actually delivered until four A. M., when goods were delivered. But words, phrases, statutes, are to be reasonably interpreted in the light of the evil they were designed to remedy. *Cravens* v. *Dewey*, 13 Cal. 40.

If this bill of exceptions were faulty, it could only be taken advantage of by motion to strike out; and a motion to strike out the complaint would be as proper as to strike out any other part of the bill. Nor has there been any motion to dismiss the appeal; but where the case is up for trial on its merits, these questions are argued as if they pertained to the merits of the case. This judgment roll discloses material error.

If this had been a suit on a promissory note or bill of exchange, and, on having been put in evidence, the de-

fendants had filed a motion for non-suit, because it did not express a consideration or was not under seal, and it had been sustained, the case would have been parallel to this, and it could have been as successfully maintained that a motion for a new trial was necessary, and that it was a case of non-suit for the reason that the evidence did not sustain the judgment.

A bill of exceptions is founded on some objection in point of law to the opinion and direction of the court as to admissibility of evidence, *the legal effect of it,* or some matter of law arising *on facts not denied.     Wheeler* v. *Winn,* 52 Pa. St. 126.

What judgment should be rendered on an agreed or a given statement of facts, whether evidence enough is given to entitle a case to go to a jury, is always a question of law.     The appeal to be made in sixty days is where the question is one of preponderance of proof. Errors of *law* could always be saved by bills of exceptions. This error should be re-examined and corrected.

The court has desired a rehearing, as we understand it, upon a single proposition.     Is it proper for the court to grant a non-suit under the provisions of the statute of frauds of this territory ?     There was no statement on appeal and no motion made for a new trial.     All that can be considered here is the judgment roll.     This court, and other courts under a similar statute, have so often decided this question that it can certainly be no longer an open one.     The bill of exceptions was not signed until after the judgment of non-suit; it could not have been, in the very nature of things.     Consequently, under the statute, it forms no part of the judgment roll, and cannot be considered on this appeal whether in criminal or civil cases.     This court has uniformly held that the appellant, in order to have alleged errors reversed, must preserve and present them in the mode prescribed by the statute or they cannot be entertained.

The evidence, or its sufficiency or insufficiency to sup-

port the judgment of non-suit, we take it, is not a proposition to be considered, nor is it comprised in the question upon which the rehearing is to be had. The complaint, answer, replication and judgment, being all that is before the court, show that a non-suit was had. It will be presumed, therefore, to have been properly granted, if the court had the power under the statute to grant it. We have referred to this for the reason that counsel for appellant have cited us to a case which bears alone upon the question of the sufficiency of the evidence to support the judgment of the court.

First. Did the court have power, under sec. 174 of Codified Statutes of 1879, then in force, upon a total failure of proof of an immediate delivery accompanying the sale, as provided by sections 169 and 170, to grant a non-suit?

(*a*) Sec. 241 provides for the submission of all questions of facts to a jury, unless a jury is waived; and sec. 234 (preceding the submission of the case to the jury), subdivision 5, confers upon the court power to grant a non-suit, upon motion of defendant, when plaintiff fails to prove a sufficient case for the jury. The mode of reviewing the question of the sufficiency of the proof is familiar to court and counsel. Under these sections of the statute it never has been doubted but that the court has power to, and that it was its duty, if it would set aside a verdict upon the insufficiency of the evidence, when such a motion was properly presented, to grant a non-suit when requested by defendant. The constitutional right of trial by jury at common law has never been construed to abridge the right of the court, upon a failure of proof, or upon uncontradicted testimony, to grant a non-suit. Certainly sec. 174 is not stronger in its terms, nor does it comprise more than sections 237 to 241, inclusive; both in like terms define *what is a question of fact, and to whom it shall be submitted.* See 24 Comstock, 468; *Territory* v. *McAndrews*, 3 Montana, 160 *et seq.*

(*b*) There is no trouble in the case when the proper distinction is made between *actual* or *positive* fraud, and *constructive* or *legal* fraud. In the former class of cases intent alone constitutes the fraud. They are cases *quasi* criminal in their character, and are especially referred to a jury to pass upon that question. In the latter class of cases a transaction under a given state of facts is declared *per se* to be a fraud as to creditors, regardless of what the intent of the parties may have been. See Statutes of 1879, pp. 578, 579, secs. 169, 176. Now, by sec. 174, last cited, it will be seen that it is only cases where *fraudulent intent* is involved that it is deemed a question of fact and not of law. Under the maxim, "*Expressio unius, exclusio alterius*," it is tantamount to saying that in other cases, the facts being undisputed, it is a question of law, and under subd. 5, sec. 234, a non-suit is proper; and this is just what all the authorities upon the subject say, so far as we have been able to discover. *Ringold* v. *Haven*, 1 Cal. 108, 121, 125; *Fitzgerald* v. *Brown*, 4 Cal. 289; *Cheeney* v. *Palmer*, 6 Cal. 119 (5th ed.), 503; *Ensminger* v. *McIntire*, 23 Cal. 593; *Davis* v. *Woods*, 29 Cal. 466; *Levy* v. *Getleson*, 27 Cal. 685; *Claflin* v. *Rosenburg*, 42 Mo. 439; 44 id. 323; *Bishop* v. *O'Connell*, 55 Mo. 158; *Donohue* v. *Gallavan*, 43 Cal. 576; *Miller, Brown & Co.* v. *Henry*, 40 Pa. 352; *Luck* v. *Skants*, 2 Phill. (Pa.) 310; Charge to Jury, Thompson, sec. 21, p. 24; 13 U. S. Digest (N. S.), p. 343, sec. 3157, and authorities there cited; *Watson* v. *Rogers*, 53 Cal. 401.

For authorities at common law referred to in 27 and 29 California, and 42, 44 and 56 Mo., *supra*, see *Edwards* v. *Harlem*, 2 T. & R. Rep. 587; *Hamilton* v. *Russell*, 1 Curtis, 415; *S. C.* 1 Cranch (U. S.), 310; *Griswold* v. *Sheldon*, 4 Comstock (N. Y.), 581 *et seq.* and authorities there cited.

GALBRAITH, J.    This is an appeal from a judgment directed to be entered by the court in pursuance of its

action in granting a motion for a non-suit. The transcript, in addition to papers constituting the judgment roll in the case, contains an "agreement" between the parties in relation to what questions should be tried; a "stipulation" in relation to an amendment of the *ad damnum* clause of the complaint, the disposition of the property, and other matters between the attorneys in the case; and also contains evidence introduced upon the trial (which was to a jury) by the plaintiff. Neither the "agreement," the "stipulation," nor the evidence, are expressly made part of, nor expressly stated in any bill of exceptions, but are simply certified to by the clerk as being a "full, true and correct transcript of certain records and proceedings filed, made and had in said court, in the above entitled cause, as the same are of record and filed in my office." Therefore, the above "agreement," "stipulation" and evidence do not constitute any part of the judgment roll, not having been made a part of or stated with a bill of exceptions, excepting that part of the "stipulation" which relates to the amendment of the complaint. This may be considered a part of the judgment roll, as constituting a portion of the pleadings. It is contended on the part of appellants that the power to make any of its proceedings under the hand and seal of the judge a part of the record is inherent in courts, independent of statute. Be this as it may, nevertheless, when the law-making power has denominated what shall constitute the judgment roll, the court will not assume to add to or detract from its specifications in relation thereto.

An *exception* is designated by the statute as being "an objection taken on the trial to a decision upon a matter of law at any time from the calling of the action for trial to the rendering of the verdict or decision." Sec. 279 of the Code of Civil Procedure. Section 294 of the same act also provides what papers shall constitute the judgment roll, and specifies among them, "all bills of exception taken and filed in said action."

The exception taken by the appellant to the ruling of the court sustaining the motion for a non-suit, and directing judgment to be entered in favor of the defendant, could not, in the very nature of the case, be an exception within the meaning of the above provisions, and therefore is no part of the judgment roll. It could not have been taken until after the rendition of the decision of the court. But granting, for the sake of the argument, that the above bill of exceptions did constitute a part of the judgment roll, nevertheless the evidence and other matters contained in the "agreement" and "stipulation," so far as they relate to the motion for a non-suit, cannot be considered in connection with such a bill of exceptions. The bill of exceptions is as follows, viz.: "To the entry of which said judgment the plaintiff then and there excepted, and asked the court to sign this bill of exceptions, and that the same be made part of the record, which is done accordingly this 22d day of March, 1880. (Signed) D. S. WADE, Judge."

Section 282 of the Code of Civil Procedure requires that "the objections shall be stated with so much of the evidence or other matter as is necessary to explain it." Section 281 requires that "the point of the exception shall be particularly stated, . . . and may be delivered in writing to the judge; . . . when delivered in writing, . . . it shall be made conformable to the truth, or be at the time corrected until it be made so conformable."

From these sections we must conclude that the particular facts, whether evidence or other matter, upon which the court rules, are intended to be presented in the bill of exceptions. It is apparent that it is principally for this reason that it is made the duty of the court to settle the exception, or, in the language of the statute, to correct it when delivered in writing, until "it shall be made conformable to the truth." That the Code of Civil Procedure intends that the bill of exceptions shall contain the evidence or other matter upon which the alleged objec-

tionable ruling of the court is made, is also evident from
the fact that the only kind of papers specified, among
those constituting the judgment roll, which could possibly
contain the evidence, are bills of exception. The Code
of Civil Procedure contemplates an appeal from the judg-
ment, in which the judgment roll alone may be consid-
ered. This is when there is no statement annexed to the
judgment roll. The provisions of the California Practice
Act, in respect to the method of presenting the action of
the court below for review, are almost identical with
those of our Code of Civil Procedure. In reference to
this subject, in *Wetherbee* v. *Carroll*, 33 Cal. 549, Saw-
yer, J., giving the opinion, says: "The judgment roll is
itself a record for an appeal, and there may be no occa-
sion for anything further to present the question raised.
But it has been settled from an early day, that, by an ap-
peal from a judgment without statement, nothing is
brought up or is a part of the record on appeal except
the judgment roll, and no question arising outside of the
roll can be considered. If any further record is required,
it must be in the form of a statement." Also in refer-
ence to exceptions, in the same case, the same judge
says: " They are the only exceptions or bills of excep-
tions known to our Practice Act, except so far as a rul-
ing and exception to it, presented by a statement made
in the mode prescribed by that act, may be regarded as
a bill of exceptions. *Quivey* v. *Gambert*, 32 Cal. 304.
The reasons upon which this restriction of the cases for
exceptions, and for the mode prescribed for taking them,
seem obvious enough. At the trial both parties are pres-
ent, and in settling the exceptions can be heard. Each
party can see that everything necessary to the presenta-
tion of the entire merits on both sides is introduced.
'The objection shall be stated with so much of the
evidence, or other matter, as is necessary to explain it,
but no more.' See p. 92; Mont. Code of Civil Procedure,
sec. 282. The parties have the same opportunity for se-

curing a correct presentation of the exceptions as is offered in settling a statement. The only other mode of making up anything like, or answering to, a bill of exceptions is by a statement proposed in the manner prescribed by the Practice Act, in the preparation of which both sides are also heard. The policy of the act is that, whenever there is a possibility that a partial record for presenting a point may be made, both parties shall have an opportunity to take part in settling it. And the two modes prescribed, one by settling the exception during the progress of the trial in the presence of both parties, and annexing it to the judgment roll; the other by a subsequent statement in the mode designated, afford an orderly and convenient mode of accomplishing, that end."

The above language is quoted as being expressive of our own view in relation to our practice on appeal. It will be observed that the above bill of exceptions does not contain, nor is it stated with, any evidence or other matter contained in the transcript. It does not refer in any manner to any such evidence or matter. It does not appear from the bill of exceptions, or even from the transcript, that the evidence which the transcript contains was all the evidence upon which the court ruled, or that it was settled by the judge, or that both parties had the same opportunity for securing a correct presentation or took part in the settlement thereof. We must therefore conclude that the evidence set forth in the transcript is not any part of the bill of exceptions, and therefore no part of the judgment roll. The transcript does not show any compliance with, or attempt to comply with, section 419 of the Code of Civil Procedure, in relation to statements on appeal. There is, therefore, no such statement. If, therefore, the appellants rely upon their bill of exception, the evidence cannot be considered in connection therewith, for it is not any part of the judgment roll. If they rely upon the other position taken in their brief, that the final decision in the case is deemed

to have been excepted to, and that the granting of the
non-suit was such a decision, then for the reasons that
the evidence is no part of the judgment roll, and that
there is no statement on appeal, the evidence cannot be
considered. The bill of exceptions is also defective, in
that it does not particularly state the point of the excep-
tion, as required by section 281 of the Code of Civil Pro-
cedure. We can see no error in the judgment roll.
When nothing appears to the contrary, the decision of
the court will be presumed to be correct. Therefore,
when the court grants a non-suit, and the evidence intro-
duced does not appear or cannot be considered, it will be
presumed that the plaintiff failed to prove a sufficient
case for a jury. The above reasons are sufficient for the
dismissal of the appeal. But in order to aid in the settle-
ment of the practice, some other questions presented by
the arguments of counsel will be briefly considered.
It is argued by appellants that under the organic act
they are entitled to have the cause reviewed upon the
showing made by the transcript, notwithstanding the pro-
visions of the Code of Civil Procedure in relation to ap-
peals. According to appellants' brief, the provision of
the organic act which is relied upon to support this posi-
tion is as follows: "Bills of exception and appeals shall
be allowed in all cases from the final decision of said dis-
trict courts to the supreme court."

It will be seen by reference to section 9 of said act, con-
taining the above language, that the sentence in which
the same appears concludes with the additional language,
"under such regulations as may be prescribed by law."

The same instrument also provides for a legislative as-
sembly. The words, "such regulations as may be pre-
scribed by law," refer to regulations to be made by the
legislative assembly of the territory. Under this pro-
vision the legislative assembly may fix the time and
prescribe the methods by which appeals may be taken, so
long as such regulations do not amount to a denial of the

right conferred by the organic act. The provisions of the legislative assembly in relation to appeals are reasonable and sufficient for the purpose. The organic act is not, therefore, infringed by requiring the appellants to comply with the provisions of the Code of Civil Procedure, in relation to the method therein prescribed, regulating appeals.

It is also contended, by respondents, that a motion for a new trial was necessary, and that therefore the evidence should have been presented in a statement on such a motion. Section 284 of the Code of Civil Procedure defines a new trial as " a re-examination of an issue of fact in the same court, after a trial and decision by a jury, court or referee." It contemplates, therefore, a case in which evidence has been submitted to, and has been passed upon by, the proper tribunal provided by law to try an issue of fact. By section 241 of the Code of Civil Procedure, "the trial of an issue of fact must be by a jury, except in actions which involve the settlement of accounts, unless waived by the parties." "A judgment of non-suit may be entered," under the fifth subdivision of sec. 234 of the said act, "by the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove a sufficient case for a jury." The jury, therefore, which under the law is the tribunal chosen to try the cause, is prevented therefrom by the action of the court, not acting as having authority to try the issue, but by reason of its general powers as a court to try matters of law, as well as by the express provision of said subdivision of sec. 234. There never was, therefore, a trial of the issue by the proper tribunal, and therefore a motion for a new trial is not, in such a case, contemplated by the code. There never was a trial by a jury because, in the judgment of the court, "the plaintiff failed to prove a case for the jury." There was not a trial by the court because a jury was not waived, but was the tribunal chosen to try the issue. It was, therefore, by its

power as judge of the law applied to the evidence intro-
duced by plaintiffs that the court granted the motion of
non-suit and took the case from the jury. This may per-
haps be better illustrated by reference to the practice
which obtained in England in the same class of cases.
Under that practice, what is now provided for by said
subdivision of sec. 234, in relation to non-suit, was taken
advantage of by what was called a demurrer to evidence.
This took place when a party disputed the legal effect of
the evidence offered. It was analogous to a demurrer in
pleading. It was a virtual declaration by the party from
whom it came, that he would not proceed, because the
evidence offered on the other side was not sufficient to
maintain the issue. Stephens on Pleading, p. 90.

The motion for a non-suit under the subdivision of sec-
tion 234, and the demurrer to evidence, if not precisely
similar, bear a close analogy. "A demurrer to evidence
is analogous to a demurrer in pleading." Same refer-
ence. We are therefore to conclude that the action of
the court in granting a non-suit, upon the ground that
the plaintiff has failed to prove a sufficient case for a
jury, is as much a decision upon a matter of law as its
action in sustaining a demurrer to a pleading. Such a
decision, therefore, does not come within the meaning of
trial as defined by the code, and such a motion, therefore,
could not be properly made as part of the proceeding
necessary to present this case for review upon the evi-
dence already in the case. It is desirable that a uniform
practice should be enforced. The statute has provided
such a method, adapted to the different kinds of judicial
proceedings. The only practical mode of securing uni-
formity in the practice is by requiring a strict adherence
to these methods. For the purpose of aiding in the fur-
therance of this object, we will now say that, in our
opinion, the method to be pursued in bringing up the
evidence, in such cases as the one at bar, for revision, is
by statement upon appeal. A statement on motion for

a new trial is improper, as such a motion, after granting a non-suit for the reason that the plaintiff has failed to prove a sufficient case for a jury, is not contemplated by the statute. The objection to the action of the court in granting such non-suit cannot be made until after the rendition of the decision. And such an objection is not an exception as that term is defined by the statute. The evidence can only be made a part of the judgment roll by having it settled in a bill of exceptions. In a case where such motion for non-suit is refused, we are of the opinion that the evidence can be brought up either in a bill of exceptions or in a statement upon appeal. The ruling in such a case is made both during the trial and before the rendition of the verdict or decision. By the word decision in its connection in section 279, we understand the legislature to indicate the final decision of the court.

The judgment is affirmed, with costs.